FREDERICK BARNARD et al. Appellants, vs. THE CITY OF CHICAGO, Appellee.

*Opinion filed October 27, 1915—Rehearing denied Dec. 8, 1915.*

1. MUNICIPAL CORPORATIONS—*what rights of the abutting owner cannot be impaired without compensation.* Since the constitution of 1870 the owner of property abutting upon a street cannot have his right of ingress and egress or his easement of light and air taken away or materially impaired by the making of a public improvement unless he is compensated for his injury.

2. DAMAGES—*the constitution of 1870 takes away protection of statutory authority to damage property.* Under the constitution of 1870 the fact that a city has statutory authority to pass an ordinance requiring a public improvement to be constructed in a street does not relieve the city from liability for damages sustained by abutting property.

3. SAME—*city is liable for damage to building caused by constructing a tunnel in a public street.* Where the construction of a tunnel in a public street by a street railway company in obedience to an ordinance causes a building on an abutting lot to crack and settle and become unsafe, the city is liable in damages, under the constitution of 1870, even though the ordinance was passed by statutory authority, the basis of the liability being the interference with the right of the owner to the full use and enjoyment of his property, including the building. (*Rigney* v. *Chicago,* 102 Ill. 64, followed; *Otis Elevator Co.* v. *Chicago,* 263 id. 419, explained.)

CARTWRIGHT and COOKE, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

KALES, KELLY & HALE, (ALBERT M. KALES, and WILLIAM B. HALE, of counsel,) for appellants.

JOHN W. BECKWITH, Corporation Counsel, (LEE D. MATHIAS, WILLIAM H. SEXTON, P. W. SULLIVAN, and WILLIAM DILLON, of counsel,) for appellee.

SAMUEL A. ETTELSON, Corporation Counsel, (GEORGE E. CHIPMAN, JOHN H. PASSMORE, ROY S. GASKILL, and WILLIAM DILLON, of counsel,) for appellee on rehearing.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellants sued the appellee in an action on the case. The court sustained a demurrer to the declaration and rendered a judgment against the plaintiffs in bar of the action and for costs, from which they have appealed.

The first count of the declaration avers that the plaintiffs were the owners of a ninety-nine year leasehold estate in certain premises in the city of Chicago fronting on La-Salle street and improved with a five-story and basement brick and stone building occupied by plaintiffs and their sub-tenants for stores and offices; that on February 11, 1907, the city council of the city of Chicago passed an ordinance authorizing the Chicago Railways Company, a street railway corporation, to construct, maintain and operate a system of street railways in the streets and public ways in the city of Chicago, and required it to reconstruct a tunnel under the Chicago river, at LaSalle street, according to the terms of the ordinance, to the approval of the commissioner of public works and under the supervision of the board of supervising engineers; that the Railways Company accepted the ordinance and in May, 1910, began the reconstruction of the tunnel, which was constructed in and beneath the surface of LaSalle street, for a passage-way under the Chicago river for its street cars; that the Railways Company excavated in and under LaSalle street for the purpose of constructing its tunnel, opened up and obstructed said street, cut off access to the plaintiffs' property, and caused the surface of the street adjacent to the plaintiffs' property and the walls of the plaintiffs' building to sink, crack and settle to such an extent that it became necessary for the plaintiffs to shore up and retain said building and support the same and re-build the foundations, floors and walls thereof, and caused plaintiffs' tenants to leave and the building to stand, in part, vacant, whereby the rents were lost to the plaintiffs, and the plaintiffs were

obliged to, and did, expend and disburse large sums of money to restore said building and prevent its destruction; that by the act of the defendant in passing the ordinance for the construction of the tunnel, and in causing the construction of the tunnel, the plaintiffs' premises were damaged and the plaintiffs have suffered damage. The second count is identical with the first, except that it states that the plaintiffs' premises were damaged by a great amount, and that no benefit accrued to the plaintiffs' property, or any part thereof, by reason of or resulting from the construction of said tunnel or by the operation of the company's railroad therein. The third count is like the other two, except that it charges that by reason of said acts the market value of the plaintiffs' premises was reduced by $10,000.

The allegation as to the obstruction of the street and of the plaintiffs' access to their building refers only to a temporary obstruction during the progress of the work, from which no damage is claimed to have arisen and the case is not based on this charge. The demurrer raises the question as to the liability of the city for damages to buildings abutting on a street caused by excavating the street for a public improvement and thereby removing the lateral support of the soil. The appellants concede that an action could not have been maintained for such damages under the constitution of 1848. (*Nevins* v. *City of Peoria,* 41 Ill. 502; *City of Quincy* v. *Jones,* 76 id. 231; *Rigney* v. *City of Chicago,* 102 id. 64.) They insist, however, that the right to recover such damages was conferred by the constitution of 1870, which provides, by section 13 of article 2, that private property shall not be taken or damaged for public use without just compensation. The corresponding provision of the constitution of 1848 was that private property should not be taken and applied to public use without just compensation, and under that constitution it was held necessary to a recovery of compensation that there

should have been a direct physical invasion of the property. Consequential injuries to property accomplished without physical contact were not compensated. (*Roberts* v. *City of Chicago,* 26 Ill. 249; *City of Chicago* v. *Rumsey,* 87 id. 348.) To afford relief in such cases, as was said in *Rigney* v. *City of Chicago, supra,* the makers of the constitution of 1870 inserted the provision just referred to. This provision was intended to afford redress in cases of damages where there was no remedy under the constitution of 1848, and accordingly in the *Rigney case* the plaintiff was held entitled to damages for the construction of a street improvement more than two hundred feet distant from his property, on another street, which made his access to the improved street less convenient. It was said: "In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

Owners of property bordering upon a street, in addition to the public right of travel which they enjoy in common with all citizens, have certain private rights incidental to their ownership of abutting property. Among these is the right of access to and egress from the property by way of the street, and this right cannot now be taken away or materially impaired without compensation to the extent of the damages suffered. (*City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379; *Illinois Malleable Iron Co.* v. *Lin-*

*coln Park Comrs.* 263 id. 446.) Another such right, of which the abutting owner may not now be deprived without compensation, is that of having light and air from the public highway, unobstructed by any encroachment on the street. (*Field* v. *Barling,* 149 Ill. 556.) As has been seen, under the constitution of 1848 these rights were not protected from destruction in the making of public improvements. If the body of the property itself was not interfered with, these incorporeal rights might be wholly destroyed. Since the constitution of 1870, any change in a street which has injuriously affected the access to abutting property has given a right of action to the owner for the damage to his property. (*City of Elgin* v. *Eaton,* 83 Ill. 535; *Chapman* v. *City of Staunton,* 246 id. 394; *Village of Grant Park* v. *Trah,* 218 id. 516; *Shrader* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 242 id. 227.) So the construction of an elevated railroad in a public street, whereby access to the street, the view and the passage of light and air over the street were obstructed,—the effect of all of which was to depreciate the value of abutting property,—gave a cause of action to the owner for the damages occasioned by such loss of access, air, light and view. *Aldis* v. *Union Elevated Railroad Co.* 203 Ill. 567.

The appellants had a right to the undisturbed occupation and enjoyment of their property and they were deprived of this right. In the absence of any statute they had clearly a right of action against the person depriving them of this right, for in the absence of statutory authority the construction of the street railway and the tunnel in the street was a public nuisance, (*Metropolitan City Railway Co.* v. *City of Chicago,* 96 Ill. 620; *People* v. *City of St. Louis,* 5 Gilm. 351;) and for damages occasioned by a public nuisance anyone who sustains special damage different from that common to all may maintain an action. (*Wylie* v. *Elwood,* 134 Ill. 281.) To the appellants' ac-

tion, therefore, the only defense is that the city was authorized by statute to pass the ordinance under which the work was done. Before the constitution of 1870 this would have been a complete defense, for acts authorized to be done by a valid act of the legislature, performed with due care and skill, in conformity with the provisions of the act, could not be made the ground of an action, however great the damage done. Since the constitution of 1870, however, the power of the legislature has been restricted and the statute constitutes no defense where property has been damaged for public use.

There is no doubt, under the averments of the declaration, that the appellants' property was damaged by the construction of the tunnel or that the tunnel was constructed for a public use. The appellants had improved their lot by building on it with reference to the street as it existed at the time, and they had the right to the use and enjoyment of the building as well as the lot. Any person excavating the public street without statutory authority created a nuisance, and if the appellants' building fell into the excavation an action at common law could be maintained for the damages. The right of an abutting owner in the soil of the street for the support of his building does not determine the question of the appellee's liability. The basis of the appellants' action is the deprivation of their right to the use and enjoyment of their property free from disturbance. No one could interfere with their premises by digging away the support of their building and defend an action for damages on the ground that the appellants had no legal right to such support, unless such person could show a legal right to make the excavation. Such authority could be derived only from a statute. No one may rightfully interfere with the use and enjoyment of abutting property by making changes in the street, whether by altering the grade, erecting structures or making excavations, except when acting under the authority of an act of the legis-

lature. Such an act confers the right to make the changes in the street, but since the constitution of 1870 compensation is required for the damages. In *Chicago and Western Indiana Railroad Co.* v. *Ayres,* 106 Ill. 511, it was said that the conclusion reached in the *Rigney case* was, "that under this constitutional provision a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character; that it does not require that the damage shall be caused by a trespass or an actual physical invasion of the owner's real estate, but if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party damaged may recover."

The doctrine of the *Rigney case,* it was said in *Otis Elevator Co.* v. *City of Chicago,* 263 Ill. 419, has not been modified, limited, extended or departed from in any degree. That doctrine, it is there said, is, that it was intended by the constitution to afford a remedy for damages resulting from an act done with legislative authority where, in the absence of such authority, there would have been a right of action at common law. In that case the premises of the plaintiff were depreciated in value by the elevation of the railroad, but there would have been no cause of action at common law. The railroad company was upon its own right of way, and was under no obligation, by contract or statute, to maintain the switch connection. It needed no statutory authority for the elevation or depression of its track, and if it destroyed the switch connection with the plaintiff's foundry and machine shop it had violated no right of the plaintiff. In the present case, in the absence of statutory authority for the construction of the tunnel in the street, there would have been a right of action for the damages to the appellants' building. The effect of the constitutional provision, under the decision in the *Rigney*

270 — 3

*case,* is to take away the protection of the legislative authority.

The various counts of the declaration stated a good cause of action and the demurrer should have been overruled.

The judgment is reversed and the cause remanded to the circuit court, with directions to overrule the demurrer to the declaration.

*Reversed and remanded, with directions.*

CARTWRIGHT and COOKE, JJ., dissenting.