The People of the State of Illinois ex rel. Kate Popp,
Appellee, v. Robert Kingery, Appellant.

Gen. No. 39,016.

Opinion filed May 19, 1937. Rehearing denied June 2, 1937.

OTTO KERNER, Attorney General, for appellant;
EARL B. DICKERSON, Assistant Attorney General, of
counsel.

LAWLOR, WALSH & BERNSTEIN, of Chicago, for appel-
lee; EDWIN D. LAWLOR, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.
On October 21, 1935, Kate Popp filed a petition in
the superior court of Cook county, by which she
prayed that a writ of mandamus issue, directed to

Robert Kingery, Director of the Department of Public Works and Buildings of the State of Illinois, commanding him that he forthwith institute appropriate proceedings to ascertain the compensation due the relator for accrued consequential damage to land not taken in the making of a public improvement by the State of Illinois, in accordance with the provision of "An Act to provide for the exercise of Eminent Domain," approved April 10, 1872, and the amendments thereto, and that such further orders may be made in the premises as justice might require and to the court should seem fit. A motion was made by defendant to dismiss this petition on the ground that it shows on its face that petitioner had an adequate remedy at law for the damages alleged to have been sustained by her, and that it fails to state the facts establishing a legal duty on the part of said defendant to bring such an action as is contemplated and provided for in "An Act to provide for the exercise of the right of Eminent Domain," approved April 10, 1872, and amendments thereto. We find nothing in the record to indicate whether or not the court passed on this motion. On April 24, 1936, and without proof being offered or received, the court entered the following findings and order, which indicate the facts set forth in the petition upon which petitioner predicates her prayer for relief:

"FINDINGS. That the relator, Kate Popp, resident of Cook County, Illinois, is the owner of a parcel of land described as: Lots One (1), Two (2), Three (3) and Four (4), parts of five (5) and Six (6) and Seven (7), Eight (8), Nine (9), Ten (10), and Eleven (11) in Block One Hundred Sixty-seven (167), and all of Block One Hundred Sixty-six (166), of that part of Blue Island, in Calumet, in Sections Thirty-one (31) and Thirty-two (32), Township Thirty-seven (37) North, Range 14, East of the Third Principal Merid-

ian; which is unimproved and located at the northeast corner of the intersection of Riverdale Road and State Bond Issue Road No. 49, in said County; that prior to the year 1934, said Riverdale Road and State Bond Issue Road No. 49, were level with the land of said relator; that during the year 1934 and ever since the respondent, Robert Kingery, has been duly appointed and acting Director of the Department of Public Works and Buildings, of the State of Illinois; that during the said year the respondent caused that part of the said State Bond Issue Road No. 49 adjacent to the relator's land to be depressed twenty (20) feet below its level and caused that part of the said Riverdale Road adjacent to the relator's land to be raised fifteen (15) feet above its level; that by reason of the change of grade in said roads aforesaid the ingress and egress to relator's land from the roads aforesaid have been completely cut off and blocked; that by reason of such changes the value of the relator's land has been greatly destroyed and she has suffered great damages; that it was the duty of the respondent, under the statutes and constitution of this State, to make just compensation to the relator before damaging her property; that it was the duty of the respondent, under the statutes and constitution of this State, in the event that no agreement could be reached with the relator as to her just compensation prior to the damaging of her land, to institute a proceeding under the provisions of 'An Act to provide for the exercise of the right of Eminent Domain,' approved April 10, 1872, or such other appropriate proceeding, to the end that the just compensation due the relator should be ascertained by a jury; that although repeated demands have been made upon the respondent to ascertain and pay the just compensation due the relator for her damages aforesaid, or to institute a proceeding under the provisions of 'An Act to provide for the exercise

of the right of Eminent Domain,' approved April 10, 1872, and the amendments thereto, or such other appropriate proceeding, to the end that the just compensation due the relator might be ascertained by a jury, the said respondent has refused so to do.''

''ORDER. It is therefore, ordered, adjudged and decreed that a writ of mandamus issue herein commanding the respondent, Robert Kingery, as Director of the Department of Public Works and Buildings of the State of Illinois, to institute with all lawful diligence a proceeding under the provisions of 'An Act to provide for the exercise of the right of Eminent Domain,' approved April 10, 1872, and the amendments thereto, or such appropriate proceeding, to the end that the damages suffered by the relator by reason of the change in grade of that part of the State Bond Issue Road No. 49 and Riverdale Road adjacent to her property may be determined by a jury, in accordance with the statutes and constitution of the State of Illinois; and that said petitioner have and recover from the respondent her costs and charges in this behalf expended, to the entry of which order defendant excepts.''

Petitioner insists that she has the right to have her damages assessed by a jury, and that this right can only be had under the Eminent Domain Act, Ill. State Bar Stats. 1935, ch. 47; Jones Ill. Stats. Ann. 109.248 *et seq.*

In *Childs & Co. v. City of Chicago,* 279 Ill. 623, Childs & Company filed a bill in equity in the superior court of Cook county against the City of Chicago and its commissioner of public works seeking to restrain defendants from constructing a bridge in Monroe street across the Chicago River, until damages which might be occasioned to complainant's property by reason of such construction, should be first ascertained and paid. The damages there claimed were similar to those

claimed in the instant case. After issues joined, a hearing was had and an order was entered dismissing the bill for want of equity. From this order an appeal was taken directly to the Supreme Court. As we gather from the court's order in the instant case, the fact here, as in the *Childs* case, is that no part of plaintiff's land was taken for the making of the improvement referred to in the court's finding. In holding that the City of Chicago could not be enjoined, the Supreme Court said:

"The principal question open for consideration on this hearing is whether the city, on the facts here stated, can be enjoined, because the complainant will suffer consequential damages from such improvement, from prosecuting a public work without first ascertaining and paying such damages. It is conceded in the briefs that no part of appellant's premises was sought to be taken and that no direct physical damage to its property was contemplated; that the damages, if any, to be sustained were entirely consequential. This court has frequently considered the question here involved. In *County of Mercer v. Wolff,* 237 Ill. 74, this court said (p. 76): 'For such actual damages, though consequential only, as may be sustained by an owner of abutting land through the taking of adjoining premises for a public use a remedy is given, and the owner may have his compensation ascertained by a jury, as required by the constitution, in a common law action. But when no part of the land of an abutting owner is taken the constitution does not require the ascertainment and payment of his consequential damages before entry can be made upon adjoining property. Damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain Act, but he is remitted to his action at law for his damages,'—citing to the same effect *Penn Mutual Life*

*Ins. Co. v. Heiss*, 141 Ill. 35, *Parker v. Catholic Bishop*, 146 id. 158, and *White v. West Side Elevated Railroad Co.*, 154 id. 620. That has long been the settled law of this State. *Stetson v. Chicago and Evanston Railroad Co.*, 75 Ill. 74, and cases cited; *Bradbury v. Vandalia Drainage District*, 236 id. 36; *Doane v. Lake Street Elevated Railroad Co.*, 165 id. 510.''

In *Barnard v. City of Chicago*, 270 Ill. 27, a common law action was brought against the city by the owner of property abutting upon a public street, to recover damages alleged to have been sustained through the construction of a tunnel in the street adjoining complainant's land under an ordinance of the City of Chicago. In holding that the property owner could recover in such action under the provision of section 13 of Article 2 of the Constitution of 1870, the Supreme Court said:

''The appellants concede that an action could not have been maintained for such damages under the constitution of 1848. (*Nevins v. City of Peoria*, 41 Ill. 502; *City of Quincy v. Jones*, 76 id. 231; *Rigney v. City of Chicago*, 102 id. 64.) They insist, however, that the right to recover such damages was conferred by the constitution of 1870, which provides, by section 13 of article 2, that private property shall not be taken or damaged for public use without just compensation. The corresponding provision of the constitution of 1848 was that private property should not be taken and applied to public use without just compensation, and under that constitution it was held necessary to a recovery of compensation that there should have been a direct physical invasion of the property. Consequential injuries to property accomplished without physical contact were not compensated. (*Roberts v. City of Chicago*, 26 Ill. 249; *City of Chicago v. Rumsey*, 87 id. 348.) To afford relief in such cases, as was said in *Rigney v. City of Chicago, supra*, the makers

of the constitution of 1870 inserted the provision just referred to. This provision was intended to afford redress in cases of damages where there was no remedy under the constitution of 1848, and accordingly in the *Rigney* case the plaintiff was held entitled to damages for the construction of a street improvement more than two hundred feet distant from his property, on another street, which made his access to the improved street less convenient. It was said: 'In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law.

"Owners of property bordering upon a street, in addition to the public right of travel which they enjoy in common with all citizens, have certain private rights incidental to their ownership of abutting property. Among these is the right of access to and egress from the property by way of the street, and this right cannot now be taken away or materially impaired without compensation to the extent of the damages suffered. (*City of Chicago v. Union Building Ass'n,* 102 Ill. 379; *Illinois Malleable Iron Co. v. Lincoln Park Comrs.,* 263 id. 446.) Another such right, of which the abutting owner may not now be deprived without compensation, is that of having light and air from the public highway, unobstructed by any encroachment on the street.

(*Field v. Barling,* 149 Ill. 556.) As has been seen, under the constitution of 1848 these rights were not protected from destruction in the making of public improvements. If the body of the property itself was not interfered with, these incorporeal rights might be wholly destroyed. Since the constitution of 1870, any change in a street which has injuriously affected the access to abutting property has given a right of action to the owner for the damage to his property. (*City of Elgin v. Eaton,* 83 Ill. 535; *Chapman v. City of Staunton,* 246 id. 394; *Village of Grant Park v. Trah,* 218 id. 516; *Shrader v. Cleveland, Cincinnati, Chicago and St. Louis Railway Co.,* 242 id. 227.)"

Section 13 of Article 2 of the Constitution of 1870, Illinois State Bar Stats. 1935, provides:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation, *when not made by the State,* shall be ascertained by a jury, as shall be prescribed by law." (Italics ours.)

Chapter 47, ¶ 1, entitled, "Eminent Domain," Illinois State Bar Stats. 1935; Jones Ill. Stats. Ann. 109.248, provides:

"That private property shall not be taken or damaged for public use without just compensation; and that in all cases *in which compensation is not made by the State in its corporate capacity,* such compensation shall be ascertained by a jury, as hereinafter prescribed." (Italics ours.)

Prior to the Constitution of 1870, and under the Constitution of 1848, there was no provision in either the constitution nor in the statute to the effect that even compensation for land *taken* for public use, either by the State or by any other public body, should be ascertained by a jury. The method provided, in general, was that the court appoint commissioners to

make an award. These commissioners reported their appraisement of the value of the land taken to the court and upon such report, judgment was entered. (See Constitution of 1848, Gross Statutes of Illinois, 1818–1869, page 658, and *Board of Trustees of Illinois & Michigan Canal v. City of Chicago,* 14 Ill. 334.) The Director of the Department of Public Works and Buildings of the State of Illinois is merely an officer and agent of the State. One claiming compensation for land "taken or damaged for public use by the state acting in its corporate capacity," as is the case here, is not given the right, either by the constitution or the Eminent Domain Act, to have such compensation determined by a jury, either in advance of or after the taking or damaging. Further, "The State could not be made a party defendant, nor compelled to sue. Her sovereignty would protect her from being coerced to prosecute or defend. *Osborn v. U. S. Bank,* 9 Wheat. R. 738; *Webster v. French,* 11 Ill. R. 254." (*Moore v. School Trustees,* 19 Ill. 83, page 86.) The effort here, to coerce the Director of the Department of Public Works and Buildings of the State of Illinois, is an effort to coerce the sovereign State. If the petitioner has been damaged, as claimed, her remedy is provided by "An Act to create the Court of Claims and to prescribe its power and duties." (Chapter 37, ¶¶ 462 to 474, Illinois State Bar Stats. 1935; Jones Ill. Stats. Ann. 126.057–126.069.)

The judgment of the superior court is reversed.

*Reversed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.